**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**DAVID MARCIEL & DEANNA MARCIEL,**

**Plaintiffs,**

**v.**

**SPRINGLEAF FINANCIAL SERVICES, INC.,**

**Defendant.**

**3:14-CV-00830-BR**

**OPINION AND ORDER**

**JOSHUA R. TRIGSTED**
Trigsted Law Group, P.C.
5200 S.W. Meadows Rd
Suite 150
Lake Oswego, OR 97035
(503) 376-6774

Attorney for Plaintiffs

**MILES D. MONSON**
Anderson & Monson, PC
Cascade Square
8625 S.W. Cascade Avenue
Suite 450
Beaverton, OR 97008
(503) 646-9230

Attorneys for Defendant

**BROWN, Judge.**

This matter comes before the Court on Defendant's Motion (#7) to Compel Arbitration. For the reasons that follow, the Court **DENIES** Defendant's Motion.

## BACKGROUND

On January 5, 2009, Plaintiffs David and Deanne Marciel entered into a Personal Credit Line Account Agreement with lender Household Finance Corporation II (HFC). The Agreement defined "we, us, and our" as "the Lender" and "you" as "the Borrower(s)." Decl. of Dana Wassam, Ex. 1 at 1. The Agreement provided in pertinent part that "[t]he terms of the Arbitration Rider signed by you as part of your agreement are incorporated herein by this reference." Wassam Decl., Ex. 1 at 3. The Arbitration Rider also signed by Plaintiffs on January 5, 2009, provides in pertinent part:

> By signing this Arbitration Rider, you agree that either Lender or you may request that any claim, dispute, or controversy (whether based upon contract; tort, Intentional or otherwise; constitution; statute; common law; or equity and whether pre-existing, present, or future) . . . arising from or relating to this Agreement or the relationships which result from this Agreement, including the validity or enforceability of this arbitration clause . . . shall be resolved, upon the election of you or us by binding arbitration pursuant to this arbitration provision and the applicable rules or procedures of the arbitration

> administrator selected at the time the Claim is filed.
>
> * * *
>
> This Arbitration Rider is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1-16 (the "FAA").

Wassam Decl., Ex. 1 at 5-6.

On April 1, 2013, Springcastle American Funding Trust purchased Plaintiffs' Personal Credit Line Account from HFC.

At some point after the sale of Plaintiffs' Personal Credit Line Account and before September 1, 2013, Plaintiffs were advised their Personal Credit Line Account had been sold to Springcastle and that Springleaf Consumer Loan, Inc.,[1] was going to become the servicer of their Account.

On September 1, 2013, Springleaf Consumer Loan became the servicer of Plaintiffs' Personal Credit Line Account.

On May 19, 2014, Plaintiffs filed an action in this Court against Springleaf Financial Services alleging Defendant had violated several provisions of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692a, *et seq*., in its efforts to

---

[1] Defendant Springleaf Financial Services, Inc., is the parent corporation of Springleaf Consumer Loan.

collect “a debt” from Plaintiffs.[2]

On July 1, 2014, Defendant filed a Motion to Compel Arbitration. The Court took Defendant’s Motion under advisement on July 29, 2014, and concludes the record is sufficiently developed to resolve the Motion without oral argument.

**STANDARDS**

Congress enacted the Federal Arbitration Act (FAA), 9 U.S.C. § 1, *et seq.,* to "advance the federal policy favoring arbitration agreements." *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1217 (9th Cir. 2008). The FAA provides arbitration agreements generally "shall be valid, irrevocable, and enforceable." *Id. See also* 9 U.S.C. § 2. The court must "rigorously enforce" arbitration agreements and "must order arbitration if it is satisfied that the making of the agreement for arbitration is not in issue." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999)(citing *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 218 (1985)). Accordingly, the court's task is to "determine (1) whether a valid agreement to arbitrate exists, and, if it does, (2) whether the agreement encompasses the dispute at issue." *Lowden*, 512 F.3d at 1217 (citation

[2] Although Plaintiffs do not identify the debt at issue in their Complaint, they make clear in their Response to Defendant’s Motion to Compel Arbitration that their FDCPA claims relate to Defendant’s efforts to collect the debt related to Plaintiffs’ January 5, 2009, Personal Credit Line Account.

omitted).

If the court determines there are unresolved issues of fact as to the formation of the arbitration agreement, the court must "proceed summarily" to a jury trial on the merits. 9 U.S.C. § 4. *See also Sanford v. Memberworks, Inc.*, 483 F.3d 956, 962 (9th Cir. 2007). If the court determines the matter is subject to arbitration, it may either stay the matter pending arbitration or dismiss the matter. *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). *See also* 9 U.S.C. §§ 3, 4.

**DISCUSSION**

Defendant moves to compel arbitration of this matter on the ground that the Arbitration Rider incorporated into Plaintiffs' Personal Credit Line Account Agreement requires arbitration of Plaintiffs' claims under the FAA. Specifically, Defendant asserts Plaintiffs' FDCPA claims "aris[e] from or relat[e] to [Plaintiffs' Personal Credit Line Account] Agreement or the relationships which result from th[at] Agreement." According to Defendant, therefore, Plaintiffs' claims must be arbitrated.

Plaintiffs, however, assert the Arbitration Rider does not apply to Plaintiffs' claims because Plaintiffs challenge the actions of Springleaf Consumer Loan who was not a party to or the assignee of Plaintiffs' Personal Credit Line Account Agreement that contains the Arbitration Rider. Although it is not entirely

clear, it appears Plaintiffs rely on the provision of the Arbitration Rider that specifies "either Lender or you may request" arbitration of "any claim, dispute, or controversy." As noted, the Lender is described in the Personal Credit Line Account Agreement as HFC. Because HFC sold Plaintiffs' Personal Credit Line Account to Springcastle, Springcastle is now the "lender" under the terms of Plaintiffs' Personal Credit Line Account Agreement. The Court notes, however, that Springcastle is not a party to this action and has not requested Plaintiffs' claims to be arbitrated. In any event, Plaintiffs appear to assert that Defendant Springleaf Financial as servicer of Plaintiffs' Account does not have the power to request arbitration of this matter under the terms of Plaintiffs' Personal Credit Line Account Agreement or the Arbitration Rider.

In its Reply Defendant asserts once again that Plaintiffs' claims in this matter arise from or relate to Plaintiffs' Personal Credit Line Account, and, therefore, this matter must be arbitrated.

## I. The plain language of Plaintiffs' Personal Credit Line Account Agreement and the Arbitration Rider do not provide Defendant with standing to invoke arbitration.

Neither party cites any law nor provides any analysis related to whether third parties may enforce arbitration clauses in agreements to which they not signatories nor could the Court find any Ninth Circuit cases that address this issue. Courts

outside of the Ninth Circuit that have addressed this issue, however, have concluded arbitration agreements like the one at issue here do not provide standing for nonsignatory third parties to enforce the arbitration agreement. For example, in *Lawson v. Life of the South Insurance Company* the plaintiffs purchased an automobile with a loan agreement through a car dealership, which subsequently assigned the loan to Chase Manhattan Bank. The loan agreement contained an arbitration clause that provided in pertinent part:

> A Dispute means any controversy or claim . . . arising from or relating to [the loan agreement]. The term Dispute includes, but is not limited to, the negotiation or breach of [the loan agreement], or any aspect of the sale of the vehicle involving any Buyer, Co–Buyer, Seller or assignee, agent, employee, surety bonding company or insurer of any of these persons. . . . If any Dispute arises, *either you or we may choose to have the Dispute resolved by binding arbitration*.

648 F.3d 1166, 1168 (11th Cir. 2011)(emphasis in original). The loan agreement defined "you" as "the buyer" (the plaintiffs), "we" and "the creditor named above" (the car dealership), and "after assignment, the creditor's assignee" (Chase Manhattan). The loan agreement gave the plaintiffs the option to purchase credit life insurance, which the plaintiffs did by checking a box on the loan agreement. In addition to checking the box on the loan agreement, the plaintiffs also entered into a separate credit life-insurance policy agreement with Life of the South. The credit life-insurance policy agreement did not include an

arbitration clause. The agreement provided, among other things, that the plaintiffs would be eligible for a refund of some of their premium from Life of the South if they paid off their car loan early. When the plaintiffs paid off their car loan early, however, Life of the South did not refund any of the plaintiffs' premium, and the plaintiffs brought an action against Life of the South seeking a refund of the premium. In turn, Life of the South moved to compel arbitration of the plaintiffs' claim based on the arbitration clause in the loan agreement. The plaintiffs opposed arbitration on the ground that Life of the South was not a party to the loan agreement and, therefore, lacked standing to enforce the arbitration clause. The Eleventh Circuit agreed with the plaintiffs:

> The scope of the arbitration clause in the loan agreement between the car dealership and the [plaintiffs] is broad, even expressly referring to disputes involving the [plaintiffs'] "insurer," but the right to enforce that clause is clearly limited to the [plaintiffs], the car dealership, Chase Manhattan, and any assignees of the car dealership or Chase Manhattan. (Life of the South does not contend that it is an assignee.) The arbitration clause in the loan agreement is not mandatory; it does not require that every dispute falling within its scope be arbitrated. Instead, the clause provides that "[i]f any Dispute arises, either you or we may choose to have the Dispute resolved by binding arbitration." On its face, the loan agreement grants only "you" (defined as the [plaintiffs]) and "we" (defined as the car dealership, Chase Manhattan, and their assignees) the right to elect to arbitrate. Life of the South is neither a "you" nor a "we." Instead, in pronoun terms, Life of the South is an unmentioned "it," and the face of the arbitration clause does

> not show an intent to give "it" the right to compel arbitration. The loan agreement does not show, on its face or elsewhere, an intent to allow anyone other than the [plaintiffs], the car dealership, Chase Manhattan, and the assignees of the dealership or Chase Manhattan to compel arbitration of a dispute, and Life of the South is none of those.

*Id*. at 1171-72.

Similarly in *Mims v. Global Credit and Collection Corporation* the plaintiff entered into a customer agreement with Capital One when the plaintiff opened a revolving credit account. The agreement contained an arbitration clause: "You and we agree that either you or we may, at either party's sole election, require that any Claim (as defined below) be resolved by binding arbitration." 803 F. Supp. 2d 1349, 1352 (S.D. Fla. 2011). The agreement defined claim as

> any claim, controversy, or dispute of any kind or nature between you and us.
>
> A. This definition includes, without limitation, any Claim that in any way arises from or relates to:
>
> - the Agreement and any of its terms.
> - this Arbitration Provision.
> - any billing or collections matters relating to your account.
> - any other matters relating to your account or your relationship with us.

*Id*. Capital One sold and assigned the plaintiff's account to Equable Ascent Financial LLC (EAF). EAF ultimately retained the

defendant Global Credit and Collection Corporation to collect the unpaid balance on the plaintiff's revolving credit account. The plaintiff, in turn, filed an action against the defendant alleging it violated the FDCPA when it left numerous telephone messages on the plaintiff's voicemail without proper FDCPA disclosures in an attempt to collect the debt. The defendant moved to compel arbitration pursuant to the plaintiff's customer agreement with Capital One (transferred to EAF). The court denied the defendant's motion to compel arbitration on the ground that the customer agreement specifically limited the arbitration provision to disputes between the plaintiff and "us," which was defined

> as meaning Capital One Bank and ***its*** successors, assigns, agents, and/or authorized representatives." (Agreement 6)(emphasis added). [The defendant] is neither an assign of Capital One nor an authorized agent of Capital One, [and] even if it was an authorized representative of EAF, the Court does not find the parties intended "us" to include an authorized representative of an assign of Capital One.

*Id*. at 1356 (emphasis in original). The court also noted:

> [T]he instant case is distinguishable from cases where the relevant arbitration provisions applied to all disputes arising out of the agreements. Courts dealing with those sorts of broad arbitration provisions have consistently held that in disputes between a signatory to the agreement and a non-signatory, the arbitration clause may be invoked as long as the dispute arises from the agreement. *See Blinco v. Green Tree Servicing LLC*, 400 F.3d 1308, 1312 (11th Cir. 2005) (concluding that provision including claims arising from "the relationship . . . result[ing]

> from the [agreement]," was broad enough to allow non-signatory third party to invoke it against plaintiff); *Sherer v. Green Tree Servicing LLC,* 548 F.3d 379, 383 (5th Cir. 2008)(holding that loan agreement including claims arising from "the relationships . . . result[ing] from th[e] [a]greement," was broad enough to include plaintiff's FDCPA claims against non-signatory debt collector). In those cases, unlike the present case, the agreements did not expressly and specifically limit the claims subject to arbitration to those between the debtor and a defined list of persons affiliated with the creditor. In contrast, here, the arbitration provision is narrower in scope. Rather than apply to all disputes arising out of the Agreement, the provision is explicitly limited to those disputes between Plaintiff and the enumerated individuals. Plaintiff thus cannot fairly be considered to have consented to arbitration with other unenumerated entities.

*Id*. at 1357.

In *Fox v. Nationwide Credit Incorporated* the plaintiff opened a consumer credit account through Monogram Credit Card Bank of Georgia pursuant to a cardholder agreement that contained an unspecified arbitration agreement. No. 09–cv–7111, 2010 WL 3420172, at *1 (N.D. Ill. Aug. 25, 2010). Monogram later merged with GE Capital Consumer Card to form GE Money Bank. GE Money then updated the terms of the plaintiff's cardholder agreement including the arbitration clause, which then provided in pertinent part:

> [U]pon the election of either party, any legal dispute between the parties will be resolved by binding arbitration. This provision replaces any existing arbitration provision between you and Us.
>
> Definitions: As used in this provision, "We,"

> "Us," "Our," and similar terms mean . . . GE Money Bank and all of its respective parents, wholly or majority owned subsidiaries, predecessors, successors, assigns, employees, officers and directors (collectively, the "Bank").
>
> * * *
>
> "Claim" means any dispute between you and Us that arises from or relates to your credit card account, the relationships that result from the account, the Agreement or any prior agreement or credit card account, including the enforceability or scope of this Provision.
>
> If you or We select to arbitrate a Claim, neither you nor We will have the right: (1) to have a court or a jury decide the Claim.

*Id.*, at *3. At some point the plaintiff's consumer credit account was referred to the defendant for collection on behalf of GE Money. The plaintiff filed an action against the defendant in which the plaintiff asserted the defendant violated various provisions of the FDCPA during its collection efforts. The defendant moved to arbitrate the matter pursuant to the arbitration clause in the plaintiff's cardholder agreement. The plaintiff opposed arbitration on the ground that "pursuant to the express language of the arbitration agreement, [the defendant] is not a party thereto and, thus, cannot exercise rights conferred by the arbitration clause." *Id.* The defendant conceded the cardholder agreement "plainly specifie[d] the express parties to that agreement: 'We,' 'Us,' 'Our,' and similar terms [to] mean GE Money Bank and all of its respective parents, wholly or

majority owned subsidiaries, predecessors, successors, assigns, employees, officers and directors." *Id*. The defendant did not assert its right to invoke the arbitration clause arose because it fell within any of the categories of entities included in the definition. Instead the defendant asserted its ability to invoke the arbitration clause arose from the definition of "claims" under the agreement, "which broadly defines the disputes that are subject to arbitration." Specifically, the defendant asserted it should be allowed to enforce the agreement "because Plaintiff's claims arose directly from [the defendant's] conduct as a debt collector for a GE Money account (arguably a dispute that 'arises from or relates to . . . the relationships that result from [the plaintiff's] account')." *Id*. The court found the defendant's argument to be unpersuasive on the ground that

> focuses on the definition of "Claims" without regard for the definition of "Us," which plainly does not include third-party debt collectors, such as [the defendant]. The definition of "Claims" incorporates the definition of "Us," and the arbitration provision applies to the resolution of legal claims between the cardholder and those entities within the definition of "Us" without regard for the definition of "Claims." Thus, the definition of "Claims" only determines the types of disputes that can be resolved through arbitration and does not expand the scope of the parties subject to the arbitration clause; the definition of "Us" determines the parties entitled to enforce the provision. [The defendant] is not an entity included in that definition.

*Id*. The court distinguished the cases on which the defendant relied noting in those cases

> there was no mention of a provision in which the claims subject to arbitration were expressly and specifically limited to those between the debtor and a defined list of persons and entities affiliated with the creditor, as exists in the arbitration clause here. The court[s] simply noted that the arbitration clause[s] covering any dispute arising out of the agreement w[ere] broad enough to include the plaintiff's claims against [the defendants].

*Id*., at *4. Accordingly, the court denied the defendant's motion to arbitrate concluding, among other things, that under the plain language of the arbitration clause in the cardholder agreement, the defendant could not invoke the arbitration clause.

This Court finds the reasoning of *Lawson, Mims,* and *Fox* to be persuasive. As in those cases, the Personal Credit Line Account Agreement and Arbitration Rider here specifically define and limit the class of entities and individuals who may invoke the arbitration clause. As in *Lawson, Mims,* and *Fox* the arbitration clause is not mandatory, but arbitration may be elected by any of the individuals or entities identified in the Personal Credit Line Account Agreement and Arbitration Rider. Neither Plaintiffs' Personal Credit Line Account Agreement nor the Arbitration Rider includes the defendant or any loan servicer in the definition of "lender" or "you." The Court, therefore, concludes Defendant is not an entity who may invoke the Arbitration Rider.

**II. Defendant is, at best, an incidental third-party beneficiary of the Personal Credit Account Agreement.**

Although Defendant does not specifically assert it may invoke the Arbitration Rider as a third-party beneficiary, the Court finds such an argument to be unpersuasive under these circumstances to the extent that Defendant may have intended to raise it.

The Court notes the Supreme Court has held a litigant may enforce an arbitration agreement under the FAA when traditional principles of state law such as third-party-beneficiary theories allow a contract to be enforced by nonparties to the contract. *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 630-31 (2009). Oregon law recognizes three categories of third-party beneficiaries: donee beneficiaries, creditor beneficiaries, and incidental beneficiaries. *Sisters of St. Joseph of Peace, Health, and Hosp. Servs. v. Russell*, 318 Or. 370, 374-75 (1994). Only "the first two categories of beneficiaries are entitled to enforce directly contractual promises intended to be for their benefit, even though they are strangers to the contract. Incidental beneficiaries are not so entitled." *Id*. at 375. "In determining whether a party is more than an incidental beneficiary, . . . Oregon cases have focused on the intent of the promisee and the promisor." *Lord v. Parisi*, 172 Or. App. 271, 278 (2001). If there is not any intent by the promisee and promisor to create a benefit for a third party, any benefit

garnered by the third party is merely incidental and does not entitle the third party to enforce any provision of the contract. *Id.*

The courts in *Lawson, Mims,* and *Fox* analyzed the issue under state laws similar to Oregon's third-party beneficiary laws and rejected the defendants' assertions that they were third-party beneficiaries entitled to enforce the arbitration agreements. For example, in *Fox* the court concluded the defendant failed to

> show[] where Plaintiff, as one of the contracting parties, intended to confer any separate and distinct benefit on [the defendant] or other third-party debt collectors. Rather, the rights created by the arbitration provision relied upon by [the defendant] — broad as they may be with regard to the types of claims that must be submitted to arbitration — were clearly intended to be limited to a specific list of persons and entities that had a right to enforce it.

*Fox*, 2010 WL 3420172, at *5 (citation omitted).

Similarly, in *Lawson* the court noted even though the language of the arbitration clause was broad, it limited the power to invoke the clause to an identified set of entities and individuals. The court concluded the defendant was not a third-party beneficiary of the loan agreement and, therefore, was not able to enforce the arbitration provision because "[t]he loan agreement does not show, on its face or elsewhere, an intent to allow anyone other than the [plaintiffs], the car dealership, Chase Manhattan, and the assignees of the dealership or Chase Manhattan to compel arbitration of a dispute, and [the defendant]

is none of those." 648 F.3d at 1172.

Here, as in *Lawson, Mims,* and *Fox*, neither the Personal Credit Line Account Agreement nor the Arbitration Rider reflect any intent by the lender or Plaintiffs to permit the servicer of the account to invoke the arbitration provision, and the Personal Credit Line Account Agreement specifically defines "we, us, and our" as the Lender and "you" as Plaintiffs. As noted, the Arbitration Rider specifies the "Lender or you may request" arbitration.

The Court, therefore, concludes on this record that Defendant is, at best, an incidental third-party beneficiary, and, as such, it does not have the right to invoke the Arbitration Rider.

**III. The June 2013 Loan Agreement is not the debt that Plaintiffs challenge in this action.**

Defendant asserts it is entitled to arbitration of this matter because a June 11, 2013, Loan Agreement between Defendant and Plaintiffs contains an arbitration provision. As noted, however, Plaintiffs make clear in their Response that they are alleging Defendant violated various provisions of the FDCPA in attempting to collect a debt that did not arise from the June 11, 2013, Loan Agreement. Specifically, Plaintiffs assert the debt underlying their claims that Defendants violated the FDCPA is the debt arising from the January 2009 Personal Credit Line Account Agreement.

On this record and in reliance on Plaintiffs' representations, the Court concludes the arbitration provision in the June 2013 Loan Agreement is irrelevant and does not provide a basis for this Court to grant Defendant's Motion to Compel Arbitration.

## CONCLUSION

For these reasons, the Court **DENIES** Defendant's Motion (#7) to Compel Arbitration.

The Clerk will be scheduling this matter for a Rule 16 Conference during which the Court will set a case-management schedule for this matter. The Court directs the parties to confer about scheduling issues and to submit at least three (3) business days before the Rule 16 Conference a jointly proposed case-management schedule.

IT IS SO ORDERED.

DATED this 2nd day of September, 2014.

/s/ Anna J. Brown

ANNA J. BROWN
United States District Judge