IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


DAVID MARCIEL & DEANNA                    3:14-CV-00830-BR
MARCIEL,

                                          AMENDED
          Plaintiffs,                     OPINION AND ORDER

v.

SPRINGLEAF FINANCIAL
SERVICES, INC.,

          Defendant.


**JOSHUA R. TRIGSTED**
Trigsted Law Group, P.C.
5200 S.W. Meadows Rd
Suite 150
Lake Oswego, OR 97035
(503) 376-6774

          Attorney for Plaintiffs

**MILES D. MONSON**
Anderson & Monson, PC
Cascade Square
8625 S.W. Cascade Avenue
Suite 450
Beaverton, OR 97008
(503) 646-9230

          Attorneys for Defendant



1 - AMENDED OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Defendant's Motion (#7) to Compel Arbitration.  For the reasons that follow, the Court **DENIES** Defendant's Motion.

<u>BACKGROUND</u>

On January 5, 2009, Plaintiffs David and Deanne Marciel entered into a Personal Credit Line Account Agreement with lender Household Finance Corporation II (HFC).  The Agreement defined "we, us, and our" as "the Lender" and "you" as "the Borrower(s)." Decl. of Dana Wassam, Ex. 1 at 1.  The Agreement provided in pertinent part that "[t]he terms of the Arbitration Rider signed by you as part of your agreement are incorporated herein by this reference."  Wassam Decl., Ex. 1 at 3.  The Arbitration Rider also signed by Plaintiffs on January 5, 2009, provides in pertinent part:

> By signing this Arbitration Rider, you agree that either Lender or you may request that any claim, dispute, or controversy (whether based upon contract; tort, Intentional or otherwise; constitution; statute; common law; or equity and whether pre-existing, present, or future) . . . arising from or relating to this Agreement or the relationships which result from this Agreement, including the validity or enforceability of this arbitration clause . . . shall be resolved, upon the election of you or us by binding arbitration pursuant to this arbitration provision and the applicable rules or procedures of the arbitration administrator selected at the time the Claim is filed.

* * *

> This Arbitration Rider is made pursuant to a
> transaction involving interstate commerce, and
> shall be governed by the Federal Arbitration Act,
> 9 U.S.C. Sections 1-16 (the "FAA").

Wassam Decl., Ex. 1 at 5-6.

On April 1, 2013, Springcastle American Funding Trust purchased Plaintiffs' Personal Credit Line Account from HFC.

At some point after the sale of Plaintiffs' Personal Credit Line Account and before September 1, 2013, Plaintiffs were advised their Personal Credit Line Account had been sold to Springcastle and that Springleaf Consumer Loan, Inc.,[1] was going to become the servicer of their Account.

On September 1, 2013, Springleaf Consumer Loan became the servicer of Plaintiffs' Personal Credit Line Account.

On May 19, 2014, Plaintiffs filed an action in this Court against Springleaf Financial Services alleging Defendant had violated several provisions of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692a, *et seq.*, in its efforts to collect "a debt" from Plaintiffs.

On July 1, 2014, Defendant filed a Motion to Compel Arbitration.  The Court took Defendant's Motion under advisement on July 29, 2014, and concludes the record is sufficiently

---

[1] Defendant and Springleaf Consumer Loan, Inc., are affiliated entities.  The parent entities of Defendant and Springleaf Consumer Loan share the same ultimate corporate parent:  Springleaf Finance, Inc., who is not party in this case.

developed to resolve the Motion without oral argument.

## STANDARDS

Congress enacted the Federal Arbitration Act (FAA), 9 U.S.C. § 1, *et seq.,* to "advance the federal policy favoring arbitration agreements." *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1217 (9th Cir. 2008). The FAA provides arbitration agreements generally "shall be valid, irrevocable, and enforceable." *Id.* *See also* 9 U.S.C. § 2. The court must "rigorously enforce" arbitration agreements and "must order arbitration if it is satisfied that the making of the agreement for arbitration is not in issue." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999)(citing *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 218 (1985)). Accordingly, the court's task is to "determine (1) whether a valid agreement to arbitrate exists, and, if it does, (2) whether the agreement encompasses the dispute at issue." *Lowden*, 512 F.3d at 1217 (citation omitted).

If the court determines there are unresolved issues of fact as to the formation of the arbitration agreement, the court must "proceed summarily" to a jury trial on the merits. 9 U.S.C. § 4. *See also Sanford v. Memberworks, Inc.*, 483 F.3d 956, 962 (9th Cir. 2007). If the court determines the matter is subject to arbitration, it may either stay the matter pending arbitration or

dismiss the matter.  *EEOC v. Waffle House, Inc.*, 534 U.S. 279,
289 (2002).  *See also* 9 U.S.C. §§ 3, 4.


## DISCUSSION

Defendant moves to compel arbitration of this matter on the
ground that the Arbitration Rider incorporated into Plaintiffs'
Personal Credit Line Account Agreement requires arbitration of
Plaintiffs' claims under the FAA.  Specifically, Defendant
asserts Plaintiffs' FDCPA claims "aris[e] from or relat[e] to
[Plaintiffs' Personal Credit Line Account] Agreement or the
relationships which result from th[at] Agreement."  According to
Defendant, therefore, Plaintiffs' claims must be arbitrated.

Plaintiffs, however, assert the Arbitration Rider does not
apply to Plaintiffs' claims because Plaintiffs challenge the
actions of Springleaf Consumer Loan who was not a party to or the
assignee of Plaintiffs' Personal Credit Line Account Agreement
that contains the Arbitration Rider.  Although it is not entirely
clear, it appears Plaintiffs rely on the provision of the
Arbitration Rider that specifies "either Lender or you may
request" arbitration of "any claim, dispute, or controversy."  As
noted, the Lender is described in the Personal Credit Line
Account Agreement as HFC.  Because HFC sold Plaintiffs' Personal
Credit Line Account to Springcastle, Springcastle is now the
"lender" under the terms of Plaintiffs' Personal Credit Line

Account Agreement.  The Court notes, however, that Springcastle

is not a party to this action and has not requested Plaintiffs'

claims to be arbitrated.

In its Reply Defendant asserts once again that Plaintiffs'

claims in this matter arise from or relate to Plaintiffs'

Personal Credit Line Account, and, therefore, this matter must be

arbitrated.

I.     **The plain language of Plaintiffs' Personal Credit Line
       Account Agreement and the Arbitration Rider do not provide
       Defendant with standing to invoke arbitration.**

Neither party cites any law nor provides any analysis

related to whether third parties may enforce arbitration clauses

in agreements to which they not signatories nor could the Court

find any Ninth Circuit cases that address this issue.  Courts

outside of the Ninth Circuit that have addressed this issue,

however, have concluded arbitration agreements like the one at

issue here do not provide standing for nonsignatory third parties

to enforce the arbitration agreement.  For example, in *Lawson v.

Life of the South Insurance Company* the plaintiffs purchased an

automobile with a loan agreement through a car dealership, which

subsequently assigned the loan to Chase Manhattan Bank.  The loan

agreement contained an arbitration clause that provided in

pertinent part:

> A Dispute means any controversy or claim . . .
> arising from or relating to [the loan agreement].
> The term Dispute includes, but is not limited to,
> the negotiation or breach of [the loan agreement],

6 - AMENDED OPINION AND ORDER

> or any aspect of the sale of the vehicle involving any Buyer, Co-Buyer, Seller or assignee, agent, employee, surety bonding company or insurer of any of these persons. . . .   If any Dispute arises, *either you or we may choose to have the Dispute resolved by binding arbitration.*

648 F.3d 1166, 1168 (11th Cir. 2011)(emphasis in original).  The loan agreement defined "you" as "the buyer" (the plaintiffs), "we" and "the creditor named above" (the car dealership), and "after assignment, the creditor's assignee" (Chase Manhattan). The loan agreement gave the plaintiffs the option to purchase credit life insurance, which the plaintiffs did by checking a box on the loan agreement.  In addition to checking the box on the loan agreement, the plaintiffs also entered into a separate credit life-insurance policy agreement with Life of the South. The credit life-insurance policy agreement did not include an arbitration clause.  The agreement provided, among other things, that the plaintiffs would be eligible for a refund of some of their premium from Life of the South if they paid off their car loan early.  When the plaintiffs paid off their car loan early, however, Life of the South did not refund any of the plaintiffs' premium, and the plaintiffs brought an action against Life of the South seeking a refund of the premium.  In turn, Life of the South moved to compel arbitration of the plaintiffs' claim based on the arbitration clause in the loan agreement.  The plaintiffs opposed arbitration on the ground that Life of the South was not a party to the loan agreement and, therefore, lacked standing to

7 - AMENDED OPINION AND ORDER

enforce the arbitration clause.  The Eleventh Circuit agreed with

the plaintiffs:

> The scope of the arbitration clause in the loan
> agreement between the car dealership and the
> [plaintiffs] is broad, even expressly referring to
> disputes involving the [plaintiffs'] "insurer,"
> but the right to enforce that clause is clearly
> limited to the [plaintiffs], the car dealership,
> Chase Manhattan, and any assignees of the car
> dealership or Chase Manhattan.  (Life of the South
> does not contend that it is an assignee.)  The
> arbitration clause in the loan agreement is not
> mandatory; it does not require that every dispute
> falling within its scope be arbitrated.  Instead,
> the clause provides that "[i]f any Dispute arises,
> either you or we may choose to have the Dispute
> resolved by binding arbitration."  On its face,
> the loan agreement grants only "you" (defined as
> the [plaintiffs]) and "we" (defined as the car
> dealership, Chase Manhattan, and their assignees)
> the right to elect to arbitrate.  Life of the
> South is neither a "you" nor a "we."  Instead, in
> pronoun terms, Life of the South is an unmentioned
> "it," and the face of the arbitration clause does
> not show an intent to give "it" the right to
> compel arbitration.  The loan agreement does not
> show, on its face or elsewhere, an intent to allow
> anyone other than the [plaintiffs], the car
> dealership, Chase Manhattan, and the assignees of
> the dealership or Chase Manhattan to compel
> arbitration of a dispute, and Life of the South is
> none of those.

*Id*. at 1171-72.

Similarly in *Mims v. Global Credit and Collection

Corporation* the plaintiff entered into a customer agreement with

Capital One when the plaintiff opened a revolving credit account.

The agreement contained an arbitration clause:  "You and we agree

that either you or we may, at either party's sole election,

require that any Claim (as defined below) be resolved by binding

8 - AMENDED OPINION AND ORDER

arbitration." 803 F. Supp. 2d 1349, 1352 (S.D. Fla. 2011). The

agreement defined claim as

> any claim, controversy, or dispute of any kind or
> nature between you and us.
>
> A.  This definition includes, without limitation,
> any Claim that in any way arises from or relates
> to:
>
>> • the Agreement and any of its terms.
>>
>> • this Arbitration Provision.
>>
>> • any billing or collections matters
>> relating to your account.
>>
>> • any other matters relating to your
>> account or your relationship with us.

*Id*.  Capital One sold and assigned the plaintiff's account to

Equable Ascent Financial LLC (EAF).  EAF ultimately retained the

defendant Global Credit and Collection Corporation to collect the

unpaid balance on the plaintiff's revolving credit account.  The

plaintiff, in turn, filed an action against the defendant

alleging it violated the FDCPA when it left numerous telephone

messages on the plaintiff's voicemail without proper FDCPA

disclosures in an attempt to collect the debt.  The defendant

moved to compel arbitration pursuant to the plaintiff's customer

agreement with Capital One (transferred to EAF).  The court

denied the defendant's motion to compel arbitration on the ground

that the customer agreement specifically limited the arbitration

provision to disputes between the plaintiff and "us," which was

defined

9 – AMENDED OPINION AND ORDER

as meaning Capital One Bank and *its* successors,
assigns, agents, and/or authorized
representatives."  (Agreement 6)(emphasis added).
[The defendant] is neither an assign of Capital
One nor an authorized agent of Capital One, [and]
even if it was an authorized representative of
EAF, the Court does not find the parties intended
"us" to include an authorized representative of an
assign of Capital One.

*Id*. at 1356 (emphasis in original).  The court also noted:

[T]he instant case is distinguishable from cases
where the relevant arbitration provisions applied
to all disputes arising out of the agreements.
Courts dealing with those sorts of broad
arbitration provisions have consistently held that
in disputes between a signatory to the agreement
and a non-signatory, the arbitration clause may be
invoked as long as the dispute arises from the
agreement.  *See Blinco v. Green Tree Servicing
LLC*, 400 F.3d 1308, 1312 (11th Cir. 2005)
(concluding that provision including claims
arising from "the relationship . . . result[ing]
from the [agreement]," was broad enough to allow
non-signatory third party to invoke it against
plaintiff); *Sherer v. Green Tree Servicing LLC,*
548 F.3d 379, 383 (5th Cir. 2008)(holding that
loan agreement including claims arising from "the
relationships . . . result[ing] from th[e]
[a]greement," was broad enough to include
plaintiff's FDCPA claims against non-signatory
debt collector).  In those cases, unlike the
present case, the agreements did not expressly and
specifically limit the claims subject to
arbitration to those between the debtor and a
defined list of persons affiliated with the
creditor.  In contrast, here, the arbitration
provision is narrower in scope.  Rather than apply
to all disputes arising out of the Agreement, the
provision is explicitly limited to those disputes
between Plaintiff and the enumerated individuals.
Plaintiff thus cannot fairly be considered to have
consented to arbitration with other unenumerated
entities.

*Id*. at 1357.

10 - AMENDED OPINION AND ORDER

In *Fox v. Nationwide Credit Incorporated* the plaintiff
opened a consumer credit account through Monogram Credit Card
Bank of Georgia pursuant to a cardholder agreement that contained
an unspecified arbitration agreement.  No. 09-cv-7111, 2010 WL
3420172, at *1 (N.D. Ill. Aug. 25, 2010).  Monogram later merged
with GE Capital Consumer Card to form GE Money Bank.  GE Money
then updated the terms of the plaintiff's cardholder agreement
including the arbitration clause, which then provided in
pertinent part:

> [U]pon the election of either party, any legal
> dispute between the parties will be resolved by
> binding arbitration.  This provision replaces any
> existing arbitration provision between you and Us.
>
> Definitions:  As used in this provision, "We,"
> "Us," "Our," and similar terms mean . . . GE Money
> Bank and all of its respective parents, wholly or
> majority owned subsidiaries, predecessors,
> successors, assigns, employees, officers and
> directors (collectively, the "Bank").
>
> * * *
>
> "Claim" means any dispute between you and Us that
> arises from or relates to your credit card
> account, the relationships that result from the
> account, the Agreement or any prior agreement or
> credit card account, including the enforceability
> or scope of this Provision.
>
> If you or We select to arbitrate a Claim, neither
> you nor We will have the right: (1) to have a
> court or a jury decide the Claim.

*Id.*, at *3.  At some point the plaintiff's consumer credit
account was referred to the defendant for collection on behalf of
GE Money.  The plaintiff filed an action against the defendant in

11 - AMENDED OPINION AND ORDER

which the plaintiff asserted the defendant violated various

provisions of the FDCPA during its collection efforts.  The

defendant moved to arbitrate the matter pursuant to the

arbitration clause in the plaintiff's cardholder agreement.  The

plaintiff opposed arbitration on the ground that "pursuant to the

express language of the arbitration agreement, [the defendant] is

not a party thereto and, thus, cannot exercise rights conferred

by the arbitration clause."  *Id*.  The defendant conceded the

cardholder agreement "plainly specifie[d] the express parties to

that agreement:  'We,' 'Us,' 'Our,' and similar terms [to] mean

GE Money Bank and all of its respective parents, wholly or

majority owned subsidiaries, predecessors, successors, assigns,

employees, officers and directors."  *Id*.  The defendant did not

assert its right to invoke the arbitration clause arose because

it fell within any of the categories of entities included in the

definition.  Instead the defendant asserted its ability to invoke

the arbitration clause arose from the definition of "claims"

under the agreement, "which broadly defines the disputes that are

subject to arbitration."  Specifically, the defendant asserted it

should be allowed to enforce the agreement "because Plaintiff's

claims arose directly from [the defendant's] conduct as a debt

collector for a GE Money account (arguably a dispute that 'arises

from or relates to . . .  the relationships that result from [the

plaintiff's] account')."  *Id*.  The court found the defendant's

12 - AMENDED OPINION AND ORDER

argument to be unpersuasive on the ground that it

> focuses on the definition of "Claims" without
> regard for the definition of "Us," which plainly
> does not include third-party debt collectors, such
> as [the defendant].  The definition of "Claims"
> incorporates the definition of "Us," and the
> arbitration provision applies to the resolution of
> legal claims between the cardholder and those
> entities within the definition of "Us" without
> regard for the definition of "Claims."  Thus, the
> definition of "Claims" only determines the types
> of disputes that can be resolved through
> arbitration and does not expand the scope of the
> parties subject to the arbitration clause; the
> definition of "Us" determines the parties entitled
> to enforce the provision.  [The defendant] is not
> an entity included in that definition.

*Id.*  The court distinguished the cases on which the defendant

relied noting in those cases

> there was no mention of a provision in which the
> claims subject to arbitration were expressly and
> specifically limited to those between the debtor
> and a defined list of persons and entities
> affiliated with the creditor, as exists in the
> arbitration clause here.  The court[s] simply
> noted that the arbitration clause[s] covering any
> dispute arising out of the agreement w[ere] broad
> enough to include the plaintiff's claims against
> [the defendants].

*Id*., at *4.  Accordingly, the court denied the defendant's motion

to arbitrate concluding, among other things, that under the plain

language of the arbitration clause in the cardholder agreement,

the defendant could not invoke the arbitration clause.

This Court finds the reasoning of *Lawson, Mims,* and *Fox* to

be persuasive.  As in those cases, the Personal Credit Line

Account Agreement and Arbitration Rider here specifically define

13 - AMENDED OPINION AND ORDER

and limit the class of entities and individuals who may invoke
the arbitration clause.  As in *Lawson, Mims,* and *Fox* the
arbitration clause is not mandatory, but arbitration may be
elected by any of the individuals or entities identified in the
Personal Credit Line Account Agreement and Arbitration Rider.
Neither Plaintiffs' Personal Credit Line Account Agreement nor
the Arbitration Rider includes the defendant or any loan servicer
in the definition of "lender" or "you."  The Court, therefore,
concludes Defendant is not an entity who may invoke the
Arbitration Rider.

**II.  Defendant is, at best, an incidental third-party beneficiary
     of the Personal Credit Account Agreement.**

Although Defendant does not specifically assert it may
invoke the Arbitration Rider as a third-party beneficiary, the
Court finds such an argument to be unpersuasive under these
circumstances to the extent that Defendant may have intended to
raise it.

The Court notes the Supreme Court has held a litigant may
enforce an arbitration agreement under the FAA when traditional
principles of state law such as third-party-beneficiary theories
allow a contract to be enforced by nonparties to the contract.
*Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 630-31 (2009).
Oregon law recognizes three categories of third-party
beneficiaries:  donee beneficiaries, creditor beneficiaries, and
incidental beneficiaries.  *Sisters of St. Joseph of Peace,*

14 - AMENDED OPINION AND ORDER

*Health, and Hosp. Servs. v. Russell*, 318 Or. 370, 374-75 (1994).

Only "the first two categories of beneficiaries are entitled to

enforce directly contractual promises intended to be for their

benefit, even though they are strangers to the contract.

Incidental beneficiaries are not so entitled."  *Id*. at 375.  "In

determining whether a party is more than an incidental

beneficiary, . . . Oregon cases have focused on the intent of the

promisee and the promisor."  *Lord v. Parisi*, 172 Or. App. 271,

278 (2001).  If there is not any intent by the promisee and

promisor to create a benefit for a third party, any benefit

garnered by the third party is merely incidental and does not

entitle the third party to enforce any provision of the contract.

*Id.*

        The courts in *Lawson, Mims,* and *Fox* analyzed the issue under

state laws similar to Oregon's third-party beneficiary laws and

rejected the defendants' assertions that they were third-party

beneficiaries entitled to enforce the arbitration agreements.

For example, in *Fox* the court concluded the defendant failed to

> show[] where Plaintiff, as one of the contracting
> parties, intended to confer any separate and
> distinct benefit on [the defendant] or other
> third-party debt collectors.  Rather, the rights
> created by the arbitration provision relied upon
> by [the defendant] — broad as they may be with
> regard to the types of claims that must be
> submitted to arbitration — were clearly intended
> to be limited to a specific list of persons and
> entities that had a right to enforce it.

*Fox*, 2010 WL 3420172, at *5 (citation omitted).

15 - AMENDED OPINION AND ORDER

Similarly, in *Lawson* the court noted even though the language of the arbitration clause was broad, it limited the power to invoke the clause to an identified set of entities and individuals.  The court concluded the defendant was not a third-party beneficiary of the loan agreement and, therefore, was not able to enforce the arbitration provision because "[t]he loan agreement does not show, on its face or elsewhere, an intent to allow anyone other than the [plaintiffs], the car dealership, Chase Manhattan, and the assignees of the dealership or Chase Manhattan to compel arbitration of a dispute, and [the defendant] is none of those."  648 F.3d at 1172.

Here, as in *Lawson, Mims,* and *Fox*, neither the Personal Credit Line Account Agreement nor the Arbitration Rider reflect any intent by the lender or Plaintiffs to permit the servicer of the account to invoke the arbitration provision, and the Personal Credit Line Account Agreement specifically defines "we, us, and our" as the Lender and "you" as Plaintiffs.  As noted, the Arbitration Rider specifies the "Lender or you may request" arbitration.

The Court, therefore, concludes on this record that Defendant is, at best, an incidental third-party beneficiary, and, as such, it does not have the right to invoke the Arbitration Rider.

16 - AMENDED OPINION AND ORDER

**III. The June 2013 Loan Agreement is not the debt that Plaintiffs challenge in this action.**

Defendant asserts it is entitled to arbitration of this matter because a June 11, 2013, Loan Agreement between Defendant and Plaintiffs contains an arbitration provision.  As noted, however, Plaintiffs make clear in their Response that they are alleging Defendant violated various provisions of the FDCPA in attempting to collect a debt that did not arise from the June 11, 2013, Loan Agreement.  Specifically, Plaintiffs assert the debt underlying their claims that Defendants violated the FDCPA is the debt arising from the January 2009 Personal Credit Line Account Agreement.

On this record and in reliance on Plaintiffs' represen-tations, the Court concludes the arbitration provision in the June 2013 Loan Agreement is irrelevant and does not provide a basis for this Court to grant Defendant's Motion to Compel Arbitration.

<u>**CONCLUSION**</u>

For these reasons, the Court **DENIES** Defendant's Motion (#7)

17 - AMENDED OPINION AND ORDER

to Compel Arbitration.

IT IS SO ORDERED.

DATED this 17th day of November, 2014.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

18 - AMENDED OPINION AND ORDER